IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Karen Butler, | ) | C/A No.: 1:08-3731-HMH-SVH |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| Sadi Rafi, Jon Ozmint, South Carolina Department of Corrections, John Doe, and Jane Doe, | ) | |
| Defendants. | ) | |

At the time of the matters alleged in the Complaint, Plaintiff was an inmate with the South Carolina Department of Corrections ("SCDC") and was housed at Camille Griffith Graham Correctional Institution for Women ("Graham"). Plaintiff has asserted claims under 28 U.S.C. § 1983, alleging various claims of violations of her constitutional rights.

Before the court is Defendants' Motion to Dismiss/Summary Judgment [Entry #11]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion for summary judgment and motion to dismiss are dispositive, this Report and Recommendation is entered for review by the district judge.

I. Factual and Procedural Background

On or about October 28, 2005, Plaintiff was incarcerated with SCDC as a result of a probation violation. She was sent to the Graham Reception and Evaluation Center near

Columbia, South Carolina, where she remained for several weeks. At the time of Plaintiff's entry into the custody of SCDC, Defendant SCDC physician Sadi Rafi ("Dr. Rafi") and others requested and received various documents comprising Plaintiff's prior medical history. The medical history showed that Plaintiff had previously suffered chest pains and nausea while visiting her physician, high blood pressure, and lacunar infarcts (strokes).

On or about November 9, 2005 while incarcerated at the Reception and Evaluation Center, Plaintiff fell and hit her head. She informed SCDC staff that she experienced numbness in both arms and her lips and had suffered this numbness for approximately three days. After a nurse's examination which did not reveal any significant abnormalities, Dr. Rafi saw Plaintiff. Plaintiff indicated she had pain, but asked to be released when Dr. Rafi began her examination. Plaintiff signed a refusal of treatment form, and Dr. Rafi counseled Plaintiff on the consequences of not being treated. The next day, on November 10, 2005, Plaintiff was seen by Dr. Rafi again under the condition that she submit to a full evaluation. During this encounter, Plaintiff told Dr. Rafi she felt terrible and was hurting everywhere, but denied shortness of breath, chest pains, and incontinence. Plaintiff claimed she could not move her right side, but Dr. Rafi observed her moving her right foot and fingers during the examination. According to Dr. Rafi, Plaintiff was not sent to the hospital because more than six hours had elapsed since Plaintiff's complaints started and there was no progression of symptoms. However, Dr. Rafi ordered an EKG, a chest x-ray, and some lab work. Dr. Rafi also reviewed

Plaintiff's past blood pressure readings and ordered medication to treat the high blood pressure.

On November 11, 2005, a correctional officer reported that Plaintiff stated she could not move. Plaintiff presented to Dr. Rafi in a wheelchair, stating that she could not move her right arm and leg. During this visit to medical, the nurse reported that Plaintiff became verbally abusive and stood up from the wheelchair. According to the nurse, Plaintiff stated that it was her right to harm herself if she wanted. As a result, the nurse put Plaintiff on crisis intervention in order to monitor her closely so that she did not hurt herself. When the nurse informed Plaintiff of the same, the nurse noted that Plaintiff moved her right leg and arm while begging not to be placed on crisis intervention.

Plaintiff was seen by a mental health counselor on November 14, 2005, who reported that Plaintiff appeared to be "self-protective" in her movements. The next day, on November 15, a nurse reported she offered Plaintiff her blood pressure medicine but Plaintiff refused to get up from her bed to get it at the cell door. The nurse reported that Plaintiff was moving her legs freely and sat up in bed without any problem, assistance, or complaints of pain. Plaintiff's records indicate that over the following days, Plaintiff continued to complain of numbness and inability to walk. However, the records also show that Plaintiff was observed walking to the bathroom and moving her right arm and leg several times in the same time period. Dr. Rafi discharged Plaintiff from crisis intervention on November 17, 2005, and Plaintiff was transferred to Leath Correctional Institution on the same day.

Plaintiff filed this action pursuant to 28 U.S.C. § 1983 on November 7, 2008, alleging Dr. Rafi's actions demonstrated a deliberate indifference to Plaintiff's medical needs, in violation of Plaintiff's constitutional rights. Defendants moved for summary judgment on September 9, 2009, and after full briefing, this matter is ripe for review.

II. Standard of Review

In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at

trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the *Celotex* case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322-323.

III.   Analysis

    A.   Defendants Ozmint and the South Carolina Department of Corrections

In Plaintiff's Opposition brief [Entry #15], she agrees "to dismiss with prejudice the South Carolina Department of Corrections, inasmuch as there is no proof of a policy violation, as well as Jon Ozmint, Director of the Department of Corrections, inasmuch as there has been produced no evidence showing that Ozmint personally participated in the Department's response to the plaintiff's medical needs." (Pl's Opp'n 1). Thus, the undersigned hereby recommends that Defendants SCDC and Ozmint be dismissed.

    B.   Medical Indifference

Plaintiff claims that Defendants' acts or omissions constituted deliberate indifference to her medical needs. Furthermore, Plaintiff claims she sustained several strokes and suffered pain, discomfort, permanent disability, humiliation, fear, and emotional distress as a result of Defendants' deliberate indifference.

In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and

wanton infliction of pain," *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976)).

The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103-105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence

wanton infliction of pain," *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976)).

The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103-105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence

wanton infliction of pain," *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976)).

The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103-105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence

or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. at 105–106. Negligence, in general, is not actionable under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328-36 & n. 3 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345-48 (1986); *Ruefly v. Landon*, 825 F.2d 792, 793-94 (4th Cir.1987); *see also Pink v. Lester*, 52 F.3d 73, 78 (4th Cir. 1995) (applying *Daniels* and *Ruefly*: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct.").

Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see also Brooks v. Celeste*, F. 3d 125 (6th Cir. 1994) ("Although several courts prior to the Supreme Court's decision in *Farmer v. Brennan*, *supra*, held that 'repeated acts of negligence could by themselves constitute deliberate indifference, *Farmer* teaches otherwise."); *Sellers v. Henman*, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows

negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); *White v. Napoleon*, 897 F.2d 103, 108-109 (3rd Cir. 1990); *Smart v. Villar*, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of her choice. *Jackson v. Fair*, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F. 2d 112 (10th Cir. 1976); *Lamb v. Maschner*, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. *Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975).

Dr. Rafi's Affidavit [Entry #11-2] describes in detail the medical care she provided to Plaintiff from October 28, 2005, to November 17, 2005, which is further supported by Plaintiff's medical records [Entry #11-3]. Plaintiff does not appear to dispute the facts contained in Dr. Rafi's affidavit or her medical records. (Pl's. Opp'n 3 ("The relevant facts in this case are essentially established by the records compiled and maintained by SCDC . . . ., as to a great extent the objective facts are not in dispute.")).

After a review of the medical records, the undersigned finds that all of Plaintiff's medical problems were timely evaluated and appropriately treated where she did not

refuse medical care. According to the undisputed affidavit of Dr. Kistler, Plaintiff most likely had lacunar infarcts while in prison. [Entry #11-4 at 4]. There is no treatment for these small strokes to prevent them from happening or to stop them from progressing. (*Id.*) Dr. Kistler stated that if Plaintiff had been standing in an ER when the symptoms of these strokes began, there is nothing that could be done for her other than to give her support until the strokes ended. (*Id.*) Thus, Dr. Rafi could not have prevented the strokes from occurring. It appears Dr. Rafi provided supportive care for Plaintiff's symptoms, while also trying to decrease Plaintiff's risk factors for stroke.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of Plaintiff. For the above stated reasons, summary judgment should be granted in favor of Defendants on this issue.

C. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual

constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support her constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

IV.  Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment [Entry #11] be granted and this case be dismissed in its entirety. If the district judge accepts this recommendation, all other pending motions will be moot.

IT IS SO RECOMMENDED.

July 13, 2010  
Florence, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**