```
IN THE UNITED STATES DISTRICT COURT
   FOR THE DISTRICT OF SOUTH CAROLINA
              AIKEN DIVISION
```

| | | |
|---|---|---|
| Karen Butler, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 1:08-3731-HMH-SVH |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Sadia Rafi, Jon Ozmint, South Carolina | ) | |
| Department of Corrections, John Doe, | ) | |
| and Jane Doe, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Shiva V. Hodges, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 of the District of South Carolina.[1] Karen Butler ("Butler"), a state prisoner, brought an action under 42 U.S.C. § 1983 alleging violations of her civil rights. In her Report and Recommendation, Magistrate Judge Hodges recommends granting Defendants' motion for summary judgment.[2] (Report and Recommendation 11.)

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

[2] Butler has agreed to dismiss Jon Ozmint and the South Carolina Department of Corrections. (Pl. Mem. Opp'n Summ. J. 1.) Further, John Doe and Jane Doe have not been served in this action and they are dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. See Treece v. South Carolina Dept. of Mental Health SCDMH, C/A No. 3:08-03909-DCN-JRM, 2010 WL 1254927, at *2 (D.S.C. Mar. 24, 2010) (unpublished) (dismiss Doe defendants because "more than 120 days have passed and plaintiff has not shown that he has served the John Doe defendants, nor has he requested an extension of

1

Butler filed objections to the Report and Recommendation.  Objections to the Report and Recommendation must be specific.  Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge.  See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984).  In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation.  See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Upon review, the court finds that Butler's objections are non-specific, unrelated to the dispositive portions of the magistrate judge's Report and Recommendation, or merely restate her claims.  Butler's objections allege that the magistrate judge failed to consider her evidence in recommending that the court grant the Defendants' motion for summary judgment on her claim for deliberate indifference to her serious medical needs.  (Objections, generally.)  The court finds that Butler has failed to state any specific objections.  Further, the court has reviewed the record de novo and finds that Butler has failed to establish a claim for deliberate indifference to her serious medical needs.  A de novo review of the record indicates that the magistrate judge's report accurately summarizes this case and the applicable law.

---

time to do so"); Givens v. Main Street Bank, Civil Action No. 5:08CV25, 2010 WL 2925942, at *1 n.2 (N.D. W. Va. Jul. 22, 2010) (unpublished) (dismissing Doe defendants because "[t]he plaintiff has not moved to amend his complaint to identify John Doe" and Rule 4(m) required "dismissal if the 'defendant is not served within 120 days after a complaint is filed'").  Discovery has been completed and no motion to amend has been filed.  Further, the Defendants moved to dismiss John and Jane Doe pursuant to Rule 4(m) in their motion for summary judgment.  Butler does not address this issue in her memorandum in opposition to the Defendants' motion for summary judgment.  Thus, the court finds that Butler has failed to provide any reasons for failing to identify and serve the Doe defendants within 120 days as set forth in Rule 4(m).  Therefore, the only remaining defendant is Sadia Rafi.

"In order to establish a claim of deliberate indifference to medical need [under the Eighth Amendment], the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). "Deliberate indifference is a very high standard–a showing of mere negligence will not meet it." Id. "The mere failure to treat all medical problems to a prisoner's satisfaction, even if that failure amounts to medical malpractice, is insufficient to support a claim under § 1983." Peterson v. Davis, 551 F. Supp. 137, 146 (D. Md. 1982).

Butler alleges that she had a serious medical need based on her "history of lacunar infarcts, hypertension, and other clinical findings that relate to the existence of a stroke," which was known by Dr. Sadia Rafi ("Dr. Rafi"), a board certified internist employed by South Carolina Department of Corrections ("SCDC"), and the SCDC staff. (Objections 5.); (Pl. Mem. Opp'n Summ. J. 14-15.) Further, Butler alleges that Dr. Rafi and the SCDC staff ignored her serious medical need, when they failed to attend to her after she complained of numbness in her extremities beginning on November 9, 2005, and when they placed her in the crisis intervention unit on November 11, 2005. (Pl. Mem. Opp'n Summ. J. 11-12.) On November 9, 2005, Butler fell and hit her head; she complained of numbness in her extremities and was seen by Dr. Rafi. However, Butler refused a full examination and treatment. (Defs. Mem. Supp. Summ. J. Ex. A (Dr. Rafi Aff. 4).) Dr. Rafi evaluated Butler on November 10, 2005, and determined that Butler

> had weakness of the right side, arm and leg, although based upon my exam and observations, I was unable to determine to what extent this was real and how much she was exaggerating her weakness or malingering. I ordered lab tests. Because more than 6 hours had elapsed since the complaints started and there was no apparent progression of signs and symptoms, I decided not to send Ms. Butler to a hospital and advised her to return to her room. I ordered an EKG, chest x-ray and some lab work, and advised Ms. Butler to start a low salt diet.

3

(Id. Ex. A (Dr. Rafi Aff. 4).) Butler continued to complain of numbness on her right side and was seen by medical staff on November 11, 2005, and was observed moving her right leg and arm and standing. (Id. Ex. A (Dr. Rafi Aff. 4-5).) Butler was placed in the crisis intervention unit on November 11, 2005, because the nurse believed based on Butler's statements that she wanted to harm herself. (Defs. Mem. Supp. Summ. J. Ex. A-1 (Medical Records).) Moreover, Butler was repeatedly evaluated while in the crisis intervention unit from November 11, 2005 until November 17, 2005. In her affidavit, Dr. Rafi provides a detailed description of the medical care she provided to Butler from October 28, 2005, to November 17, 2005, and copies of the medical records. (Id. Ex. A (Dr. Rafi Aff., generally).) Further, the Defendants' medical expert, Dr. Kent H. Kisler, a board certified neurologist, states in his affidavit that Butler likely experienced "lacunar infarcts while in prison" and "[t]here is no treatment for these small strokes to prevent them from happening or to stop them from progressing." (Defs. Mem. Supp. Summ. J. Ex. B (Dr. Kisler Aff. at 3).)

At best, Butler alleges a claim for medical malpractice which "is insufficient to support a claim under § 1983." Peterson, 551 F. Supp. at 146. In addition, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Butler has not alleged any exceptional circumstances.

In addition, Butler alleges that while in the crisis intervention unit, she was unable to retrieve her food from the window in her room and soiled herself repeatedly because she was unable to walk. (Pl. Mem. Supp. Summ. J. 6 (stating that Butler "was treated in a cruel and

inhumane fashion and was allowed to urinate on herself and go without food and that Dr. Rafi is responsible for this rank inhumanity and the consequent needless suffering experienced by the plaintiff").) The only defendant remaining in this case is Dr. Rafi and there is no evidence that Dr. Rafi believed that Butler was unable to retrieve her food or that she was unable to walk.

> A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

Farmer v. Brennan, 511 U.S. 825, 837 (1994). Although Butler complained of an inability to walk and that she repeatedly soiled herself, the record is replete with evidence that SCDC staff observed Butler's ability to walk, move her right side, and sit up in bed unassisted. (Def. Mem. Supp. Summ. J. Ex. A (Dr. Rafi Aff., generally) and Ex. A-1 (Medical Records).) Dr. Rafi notes in her affidavit that Butler was questioned by a mental health counselor on November 14, 2005, about Butler soiling herself and her refusal to retrieve her food. Butler indicated that she "did not know why she could not walk or get her food or drink from the cell door," and "[t]he mental health counselor thought that Ms. Butler was being self-protective and not moving as much as she was physically capable." (Id. Ex. A (Dr. Rafi Aff. 5).) On November 15, 2005, because the medical staff had been unable to identify a reason for Butler's "occasional absolute inability to walk," the mental health counselor "wanted to rule out a conversion disorder in which a symptom such as paralysis or weakness is caused by psychological factors that initiate or exacerbate the deficit, but the deficit is not intentionally produced and a paralyzed extremity will

move inadvertently when attention is directed elsewhere." (Id. Ex. A (Dr. Rafi Aff. 6).) The mental health counselor instructed the SCDC staff to deliver food and drink to Butler. (Id. Ex. A (Dr. Rafi Aff. 6).) Further, Dr. Rafi was not present when Butler made the comments that led the nurse to believe that Butler wanted to harm herself and did not make the decision to place Butler in the crisis management unit. (Id. Ex. A-1 (The nurse's note from November 11, 2005 states as follows: "I told [Butler] to sit and she stated that it was her right to harm herself if she wanted to and it was her business to do so. I explained to [Butler] that I would be placing [Butler] on crisis." Further, the nurse's note indicates that Dr. Rafi was notified of the decision.).) Based on the foregoing, Dr. Rafi did not knowingly disregard an excessive risk to Butler's health and safety. As such, Dr. Rafi is entitled to summary judgment on Butler's claim for deliberate indifference to her serious medical need.

Finally, Dr. Rafi is entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 614 (1999) (internal quotation marks omitted).

> What this means in practice is that whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.

Id. (internal quotation marks omitted). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. This accommodation for reasonable error exists because officials should not err always

on the side of caution because they fear being sued." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (internal citation and quotation marks omitted). Butler has failed to establish that Dr. Rafi violated Butler's constitutional rights. Further, even if Dr. Rafi violated Butler's constitutional rights, there is no evidence that she acted in an objectively unreasonable manner or knowingly violated the law. Therefore, Dr. Rafi is entitled to qualified immunity. Based on the foregoing, the court adopts Magistrate Judge Hodges' Report and Recommendation.

Therefore, it is

**ORDERED** that Defendants' motion for summary judgment, docket number 11, is granted.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
August 4, 2010

### NOTICE OF RIGHT TO APPEAL

The Plaintiff is hereby notified that she has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.